# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CAROLE JANE LOMBARD, | ) | Case No. 07-30739 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| NANCY J. GARGULA, United States Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 10-3008 |
| | ) | |
| CAROLE JANE LOMBARD, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This revocation of discharge proceeding presents one of the more blatant cases of lying, deception and fraudulent conduct to come before the Court in years. In the eyes of the Chapter 7 panel trustee, it is the most egregious case of deception he has seen in his more than 20 years as a panel trustee. The evidence adduced at the trial on the United States Trustee's ("UST") complaint under 11 U.S.C. § 727(d)(1) and (d)(2) confirmed these characterizations. Thus, it should be no surprise that the Court finds ample evidence here to support a revocation of discharge under § 727(d)(2); the UST's § 727(d)(1) action, however, is time-barred and must be dismissed.[1]

## BACKGROUND

In early January 2007, the Defendant, Carole Lombard, contacted attorney Charles Edwards concerning her financial situation. She advised Mr. Edwards that she owned an unencumbered 2004 Nissan Altima valued at $15,300 and a 1995 Harley Davidson three-wheel motorcycle. Apparently, Mr. Edwards told her that she would need to get rid of those assets before she filed bankruptcy or she would lose them to the trustee. He suggested she come back to see him in six months after she

---

[1] Had it not been, the evidence would have been more than sufficient to support a denial of discharge under §727(d)(1) as well.

had disposed of the vehicles.[2]  When Ms. Lombard filed a Chapter 7 voluntary petition some nine months later, on October 16, 2007, her bankruptcy schedules and statement of financial affairs did not disclose her ownership or transfers of the Altima or Harley.  The schedules were also bereft of any mention of the Debtor's later-discovered extensive (and quite valuable) collections of jewelry, Harley Davidson clothing and accessories, and "Beanie Babies."[3]

Norman Rouse, the Chapter 7 panel trustee appointed in the Debtor's bankruptcy estate, conducted the Debtor's § 341 meeting of creditors on November 8, 2007, at which time the Debtor testified under oath that the Harley was "in parts" and that she had transferred both the Harley and the Altima to her brother, Randall Lombard, in early 2007.  The Debtor and Randall lived less than a block away from each other at that time.  The Debtor further testified that Randall paid her $12,500 in cash for the Altima and $1,500 for the Harley, but that he was permitting her to use the Altima.  She produced handwritten receipts to substantiate the alleged sale.  However, Randall later testified at a Rule 2004 examination on December 8, 2009, that he had no documentation to proved the alleged payments to the Debtor.  Missouri Department of Revenue records show that titles to the Altima and to the Harley were transferred to Randall in January 2007 and transferred back to the Debtor in June (Altima) and August (Harley) 2009.

The Debtor received a discharge on January 9, 2008.

In July 2009 Randall told the Trustee that he was moving to Kansas.  Suspicious that the Debtor's transfer of the Altima to Randall might have been fraudulent, the Trustee drove by the Debtor's home on July 30, 2009, to see if she had retained possession of the Altima even though her brother – the purported owner of the Altima – had moved away.  His suspicions were confirmed. The Trustee saw not only the Altima parked in front of the Debtor's house, but the Harley was also

---

[2]The testimony regarding Ms. Lombard's discussions with Mr. Edwards is hearsay, but Debtor's counsel in this adversary proceeding (not Mr. Edwards) did not object to its admission into evidence.  As a substantive matter, the testimony is irrelevant, inasmuch as it bears on the UST's § 727(b)(1) claim, which is untimely under § 727(e)(1).  Nevertheless, it bears mentioning to illustrate the depth of the Debtor's deception and to remind counsel that best practices would have warranted greater diligence when the Debtor returned to his office nine months later and declared that she no longer had the property and failed to disclose the transfer of the Altima and Harley on her Statement of Financial Affairs.

[3]Beanie Babies are small stuffed animals that first came on the American pop culture scene in 1993 with the introduction of nine "babies" with names such as Squealer the Pig, Splash the Whale, Chocolate the Moose, and Patti the Platypus.  The animals became a phenomenon in the late 1990s and are now considered a collectible.  *See* *http://en.wikipedia.org/wiki/Beanie_babies.*

there with a "for sale" sign and a telephone number. The Trustee then decided to launch a "sting" operation.

The Trustee asked Christy House, a paralegal in his law office, to call the posted number and inquire about the Harley. Ms. House testified that the Debtor told her that she had owned the motorcycle for four years and that it had never been wrecked or had any major repair work. The Debtor bragged about improvements she had made to the bike (such as new foot plates, chrome handle bars, a new shift plate, and a new easy-clutch) and offered to sell it to Ms. House for $28,750. The Debtor also told Ms. House that she had a lot of Harley Davidson clothing and jewelry to sell.

Still operating undercover, Ms. House arranged to meet the Debtor at her house to inspect the Harley and the other merchandise. Over the course of several visits, the Debtor showed Ms. House an extensive jewelry collection, including an eight-karat (total weight) diamond ring, racks upon racks of Harley clothing and accessories, and several large bins of Beanie Babies. The Debtor admitted to Ms. House that she had a shopping addiction, a confession verified by her large inventory of discretionary purchases and significant credit card debt.

On August 10, 2009, Rouse, the panel trustee, filed an Emergency Motion for a Temporary Restraining Order and to Compel Turnover of Property, which the Court granted *ex parte*. Armed with the TRO and assisted by two sheriff's deputies, the Trustee "raided" the Debtor's trailer and recovered the Harley and the Debtor's inventory of valuable personal property.

On August 12, 2009, the Trustee filed a complaint against the Debtor and Randall Lombard for turnover of property, including the Altima, Harley, jewelry, and clothing.[4] And on February 12, 2010, the Court entered an agreed order resolving the complaint against the Debtor and Randall Lombard, pursuant to which the Debtor turned over the Harley and $9,700 to the Trustee,

---

[4] In the Complaint, the "partial" list of the previously undisclosed property included a Harley diamond ring, Harley necklaces, Harley earrings, diamond and various genuine stone bracelets, diamond earrings, diamond rings, a gold band with three stones, a ring with at least a two-karat Marquise cut center diamond with six tear-dropped diamonds and two rows of 28 baguette diamonds, a gold anniversary band diamond ring, a diamond tennis bracelet, a gold chain bracelet, a white diamond ring, a pearl and four-diamond wedding ring, full leather Harley riding suits, jeans, Montana Crystal country wear outfits, Harley t-shirts, five Harley helmets, Harley and Justin Boot Co. belts, Harley purses, Harley gloves, Harley riding head gear, Harley and Justin Boot Co. foot attire, Harley jackets, Harley reflective riding outfit, various motorcycle riding eye-wear, a Harley travel coffee set, a Harley luggage set, and other Harley paraphernalia.

representing the proceeds of the Altima which had been sold by the Debtor to a dealer on June 16, 2009. The February 12 Order specifically found that the Harley was an asset of the Debtor's estate.

The United States Trustee commenced this adversary proceeding on April 15, 2010.

## DISCUSSION

Before delving into the substance of the UST's allegations, the Court must first consider the timeliness of the UST's causes of action under § 727(d)(1) and (2). Despite their textual proximity in the Code, these two code sections operate under different time limitations. Section 727(e)(1) requires that actions under § 727(d)(1) be brought against a debtor within one year after her discharge is granted.[5] Section 727(d)(2) actions must be brought before the later of "(A) one year after the granting of such discharge; and (B) the date the case is closed."[6] This case is still open, so there is no impediment to the UST's § 727(d)(2) claim. The UST's § 727(d)(1) claim, however, is time barred; the discharge was entered on January 9, 2008, and the UST didn't file her complaint until April 15, 2010.

The UST acknowledges that the complaint was filed more than a year after the discharge was entered but argues that the time limit set out in § 727(e)(1) should be equitably tolled because the delay in filing the complaint was due solely to the Debtor's continued concealment of her fraud against the estate. The UST contends that the general proposition that equitable tolling should be read into every federal statute[7] applies to § 727(e)(1) and cites several cases that have applied equitable tolling in similar situations.[8]

---

[5] *See, e.g.*, *In re Abdelmassia*, 362 B.R. 207, 212-15 (Bankr. D. N.J. 2007) (citing cases).

[6] 11 U.S.C. § 727(e)(2).

[7] *See Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (stating that the doctrine of equitable tolling is read into every federal statute of limitation); *United States v. Beggerly*, 524 U.S. 38, 48, 118 S.Ct. 1862, 1868, 141 L.Ed.2d 32 (1998) (equitable tolling applies unless inconsistent with the statutory text).

[8] *See McColley v. Rosenberg* (*In re Candor Diamond Corp.*), 76 B.R. 342 (Bankr. S.D. N.Y. 1987) (applying tolling to fraudulent transfers); *In re Olivier*, 819 F.2d 550 (5th Cir. 1987) (applying tolling to concealment of property under § 727(a)(2)); *Caughey v. Succa* ( *In re Succa* ), 125 B.R. 168 (Bankr. W.D. Tex. 1991) (applying tolling to the time limitation in § 727(e)(2)).

The Court certainly appreciates the UST's position, and agrees that if equitable tolling applied to § 727(e)(1) it would be hard to imagine a more deserving, *i.e.*, egregious, case than this one. However, the Court is persuaded by the majority of cases holding that equitable tolling does not apply to § 727(e)(1).[9]

As the court in *Dahar v. Bevis* (*In re Bevis*) concisely stated:[10]

> Reading the doctrine of equitable tolling into § 727(e)(1) appears to upset a decision already made by Congress. Section 727(e)(1), when read in conjunction with § 727(d)(1), appears already to account for the circumstances that equitable tolling is designed to remedy. Section 727(d)(1), by its express terms, is not applicable unless the party requesting the revocation of a debtor's discharge did not know of the operative fraud until after the granting of a discharge. Thus, the application of § 727(d)(1) always involves a party who has not discovered fraud until some period after the debtor receives his or her discharge. Yet § 727(e)(1) clearly imposes a one-year time limit beginning from the date of the debtor's discharge, notwithstanding the fact that the party requesting revocation has not discovered the relevant fraud until some time after discharge. Accordingly, when § 727(e)(1) is placed against the backdrop of § 727(d)(1), it appears that Congress did not intend for equitable tolling to apply to § 727(e)(1).

The UST's § 727(d)(2) claim, on the other hand, is timely and well taken.

To revoke a debtor's discharge under § 727(d)(2), the UST must establish by a preponderance of the evidence that: 1) the Debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and 2) knowingly and fraudulently failed to report the acquisition of or entitlement to the property or to deliver or surrender the property to the trustee.[11] The UST has proved both of these elements.

First, the Debtor acquired property of the estate when title to the Altima and Harley was transferred back into her name in June (Altima) and August (Harley) 2009. The Court explicitly found that the Harley was property of the estate in its February 12, 2010 Order resolving the

---

[9] Because the Court holds that equitable tolling does not apply to § 727(e)(1), it does not need to decide whether the knowledge of a panel trustee is imputed to the United States Trustee for determining when the UST knew or should have known of a debtor's fraud under § 727(d)(1). The Court would note, however, as it held on the record in *UST v. Clayton Cavitt*, Case No. 09-3026, that the plain language of § 727(d)(1) appears to preclude the imputation of knowledge between the UST and a panel trustee.

[10] 242 B.R. 805 (Bankr. D. N.H. 1999).

[11] 11 U.S.C. § 727(d)(2).

Trustee's complaint for turnover against the Debtor and Randall Lombard. And it implicitly found that the Altima was property of the estate when the Court ordered the Debtor to turn over to the Trustee the proceeds from the Debtor's sale of the Altima ($9,700).

The Debtor's argument that she did not acquire or become entitled to "property of the estate" because her brother had possession of and title to the Altima and Harley on the petition date is contrary to the law of the case and is without merit. The transactions "transferring" the Altima and the Harley from the Debtor to her brother (and back again) were sham transactions. Therefore, they had no legal effect. The Debtor had an interest (albeit equitable, not titular) in the Altima and Harley on the petition date. Therefore, the Altima and Harley always retained their character as property of the estate under 11 U.S.C. § 541, and when the Debtor regained title to those vehicles in 2009 after the entry of her discharge she acquired property that was property of the estate.

Second, the facts overwhelming support a finding that the Debtor's conduct in failing to disclose her reacquisition of estate property was knowing and fraudulent. The phrase "knowingly and fraudulently" in § 727(d)(2) requires that the debtor's actions must have been taken with the intent to defraud the trustee, or be so reckless as to justify a finding that the debtor acted fraudulently.[12] In making such a determination, a debtor's fraudulent intent may be inferred from all of the surrounding circumstances or from the debtor's course of conduct.[13]

Here, the surrounding circumstances are rife with indicia of fraudulent intent. Prior to filing bankruptcy, the Debtor was told by her attorney that she needed to "get rid of" the Altima and Harley before she filed bankruptcy. She did that. But instead of legitimately selling these items, she transferred title to them to her brother, Randall, for no consideration. The Court puts no credence in the handwritten receipts she supplied to the Trustee. Neither Randall nor the Debtor has provided any testimonial or documentary proof that Randall paid anything for the vehicles. Then, after the entry of her discharge (and near the time her brother was moving away), the titles to the Altima and Harley were transferred back to her, again without any consideration.

These facts, standing alone, would be sufficient to establish that the Debtor's failure to report her reacquisition of property of the estate was knowing and fraudulent. But when they are

---

[12] *See Werner v. Puente* (*In re Puente*), 49 B.R. 966, 969 (Bankr. W.D. N.Y.1985).

[13] *In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992).

considered in conjunction with the massive fraud the Debtor attempted to perpetrate on the estate by concealing her large inventory of valuable personal property, there can be no question that the Debtor's conduct here was knowing and fraudulent.[14]

## CONCLUSION

For the reasons stated above, the Court finds that the United States Trustee has established, by a preponderance of the evidence, all of the elements required under 11 U.S.C. § 727(d)(2) to revoke the Debtor's discharge. The Trustee's action under 11 U.S.C. § 727(d)(1) is time-barred and will be dismissed.

A separate order revoking the Debtor's discharge will be entered contemporaneously with this opinion.

**ENTERED** this 7th day of September 2010.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
conventionally or electronically to:
Sherri Wattenbarger
Norman Rouse
Thomas Williams

---

[14] The Debtor did not appear at trial to testify in opposition to the UST's very substantial evidence.